UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDAN MORTGAGE, INC., | ) |
| Appellant, | ) |
| v. | ) No. 13 CV 5870 |
| | ) Hon. Marvin E. Aspen |
| DARYL A. HALL and TONJA HALL, | ) |
| Appellees, Debtors. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Appellant Brendan Mortgage, Inc. ("Brendan") filed this appeal challenging the bankruptcy court's ruling in an adversary proceeding concerning the nature and extent of Brendan's lien on the residence of Appellees Daryl A. Hall and Tonja Hall ("Debtors"). On May 7, 2012, Debtors filed an adversary proceeding to determine the status of Brendan's lien on their property. On July 3, 2013, the United States Bankruptcy Court for the Northern District of Illinois ruled that the lien was wholly unsecured and stripped off the lien. Brendan argues that the bankruptcy court erred in determining that the lien was wholly unsecured and in stripping off the lien. For the following reasons, we affirm the bankruptcy court's decision.

**BACKGROUND**

The underlying facts and procedural context are detailed in the bankruptcy court's July 3, 2013 opinion. *In re Hall*, 495 B.R. 393, 395 (Bankr. N.D. Ill. 2013). For purposes of this ruling, we summarize the pertinent facts.

On February 28, 2012, Debtors filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. *Id.* On May 7, 2012, Debtors filed an adversary proceeding to strip

Brendan's lien on the Debtors' principal residence in Chicago, Illinois ("Property"). (Adv. Dkt. No. 1.) The Debtors' Chapter 13 bankruptcy plan was confirmed on March 28, 2013. (3/28/13 Order Confirming Chapter 13 Plan, Adv. Dkt. No. 15-10.)

The Property was saddled with three mortgages on the petition date. The first mortgage, held by Bank of America, N.A., is valued at $131,018. The second mortgage, held by CitiFinancial, is valued at $19,778. Brendan Financial holds the third mortgage, valued at $125,017.74. *In re Hall*, 495 B.R. at 395. As discussed below, the bankruptcy court ultimately concluded that "the aggregate value of the first and second liens—$150,796—exceeds the value of the Property." *Id*.

As to valuation of the Property, on February 11, 2012, Diane Howard first appraised the Property for $150,000 using the sales comparison approach and $156,000 using the cost comparison approach. (Debtors' 2/11/12 Appraisal, Adv. Dkt. No. 15-10 at 4.) The Debtors listed the value of their property as $150,000 on the schedule they filed on May 7, 2012. *Id*. They then submitted an appraisal by Thomas M. Collins, who only used the sales comparison approach and valued the Property at $145,000 as of August 10, 2012. *In re Hall*, 495 B.R. at 395.

Brendan Financial submitted an appraisal completed by Michael Nunn who determined that the value of the Property as of September 23, 2012 was $197,600, using the cost approach to valuation, and $151,000, using the sales comparison approach. *Id*.

At an evidentiary hearing held on October 4, 2012, Collins and Nunn testified and described their respective research methods, qualifications, and conclusions. *Id*. The bankruptcy court was able "to evaluate the credibility and demeanor of both appraisers during extensive

testimony, and to observe their composure, confidence, and consistency in responding to questions on cross-examination and on redirect." *Id*.

The bankruptcy court determined that Collins' August appraisal was the most credible valuation and determined that the Property was worth $145,000. *Id*. at 397. Given that this valuation fell below the $150,796 value of the first two mortgages, the bankruptcy court found "there was no equity to which Brendan Financial's lien can attach" and that it was thus wholly unsecured. *Id*. The bankruptcy court then stripped off Brendan's lien on the Property but still allowed the possibility that the lien would remain intact if the Debtors failed to complete their Chapter 13 plan.

## STANDARD OF REVIEW

We will review the bankruptcy court's findings of fact for clear error and will review *de novo* its conclusions of law. *Stamat v. Neary,* 635 F.3d 974, 979 (7th Cir. 2011) (citing *In re Resource Tech. Corp.*, 624 F.3d 376, 382 (7th Cir. 2010)). Mixed questions of law and fact are reviewed *de novo*. *Stamat*, 635 F.3d at 979 (citing *Mungo v. Taylor,* 355 F.3d 969, 974 (7th Cir. 2004)); *but see In re Griffin Trading Co.*, 683 F.3d 819, 824 (7th Cir. 2012) ("These are both mixed questions of fact and law that the bankruptcy court addressed in its first decision, and so our review is only for clear error.") (citing *Levenstein v. Salafsky*, 414 F.3d 767, 773 (7th Cir. 2005)); *Ojeda v. Goldberg,* 599 F.3d 712, 716 (7th Cir. 2010) ("Justifiable reliance is a mixed question of law and fact and is reviewed for clear error."). When reviewing mixed questions of law and fact *de novo*, courts in this circuit have bifurcated the factual presuppositions and legal conclusions involved and reviewed the factual premises for clear error and legal conclusions of the lower court *de novo*. *See Brendan Mortg. Inc. v. Lanum*, Nos. 13 C 5589, 13 C 5642, 2013 WL 6634012, at *3 (N.D. Ill. Dec. 16, 2013) ("Valuation is a mixed question of law and fact,

with the bankruptcy court's factual premises subject to review for clear error and its legal conclusions subject to *de novo* review."); *Cathcart v. Wachovia Mort.*, No. 04 C 1236, 2005 WL 756208, at *2 (S.D. Ind. Feb. 22, 2005) ("'Valuation is a mixed question of law and fact,' and thus the lower court's factual premises are 'subject to review on a clearly erroneous standard, and the legal conclusions [are] subject to *de novo* review.'") (quoting *In re Stembridge*, 394 F.3d 383, 385 (5th Cir. 2004)).

The clearly erroneous standard postulates that "[i]f the bankruptcy court's 'account of the evidence is plausible in light of the record viewed in its entirety, we will not reverse its factual findings even if we would have weighed the evidence differently.'" *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008) (quoting *In re Lifschultz Fast Freight,* 132 F.3d 339, 343 (7th Cir. 1997)).

## ANALYSIS

### A. Whether the Bankruptcy Court Erred in Valuing the Debtors' Property

Valuation is a question of fact. *Matter of Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990) (citing *Bank Hapoalim v. E.L.I. Ltd.,* 42 B.R. 376, 379 (N.D. Ill. 1984)). Therefore, we cannot overrule the bankruptcy court's valuation of Debtors' property unless it was clearly erroneous. *See Mungo*, 355 F.3d at 974–97 (holding that valuation of a marital estate in a bankruptcy proceeding is subject to the clear error standard); *Zuhone v. C.I.R.,* 883 F.2d 1317, 1323 (7th Cir. 1989) (holding in a tax case that "fair market value is a question of fact reviewable under the 'clearly erroneous' standard"); *In re McCook Metals, LLC*, No. 05 C 2990, 2007 WL 4287507, at *5 (N.D. Ill. Dec. 4, 2007).[1]

---

[1] To the extent that case law deems valuation a mixed question of law and fact, we are dealing presently with factual disputes, which are reviewed for clear error.

4

Brendan argues that the bankruptcy court erred in determining the value of Debtors' property because it relied on Collins' August 10, 2012 appraisal to assess the home's value, as opposed to Howard's February 11, 2012 appraisal and Nunn's September 23, 2012 appraisal. (Brendan Br. at 14–15.) The bankruptcy court found Collins' testimony more credible than Nunn's after "observ[ing] [the appraisers'] composure, confidence, and consistency in responding to questions on cross-examination and on redirect." *In re Hall*, 495 B.R. at 393; *In re Hernandez*, 493 B.R. 46, 50 (Bankr. N.D. Ill. 2013) ("A judge should look to the accuracy, credibility and methodology employed by the appraisers.") (internal quotations omitted). Additionally, the bankruptcy court did not have an opportunity to assess Howard's credibility because she did not testify. Because the bankruptcy court found Collins to be the most credible, it is sensible that it would assign the most weight to Collins' estimation. According to Collins, the Property in February 2012 "would be probably around the same or pretty close to the same" as the value in August 2012. (10/04/12 Trans., Adv. Dkt. No. 15-4 at 17.) Therefore, it was not erroneous for the bankruptcy court to rely on Collins' testimony as to the Property's value as opposed to the other appraisals.

In addition to credibility determinations, the time differential between the petition filing date and the appraisal date is a factor that the judge may take into account when assessing the accuracy of the appraisals and testimony. *See In re Briseno*, 496 B.R. 509, 517 (Bankr. N.D. Ill. 2013); *In re Hernandez*, 493 B.R. at 49. Here, the bankruptcy court determined that Collins' inspection of the home's interior and his selection of appropriate comparables made his August appraisal more "credible and persuasive." *In re Hall*, 495 B.R. at 396. Since the bankruptcy court's credibility determinations are "plausible in light of the record viewed in its entirety," we are not in a position to declare that the bankruptcy court was clearly erroneous in weighing these

considerations more heavily than the nearly six-month period between the petition date and the August appraisal. *Freeland*, 540 F.3d at 729.

The bankruptcy court was not clearly erroneous in relying on Collins' August 10, 2012 appraisal to reach a $145,000 valuation of the Debtors' property.

**B.     Whether the Bankruptcy Court Erred in Permitting the Lien Strip-off**

Because the bankruptcy court's valuation of the Property is not clearly erroneous and is less than the sum of the first two mortgages, Brendan's lien is wholly unsecured. 11 U.S.C. § 506(a)(1). Brendan argues that the bankruptcy court erred in stripping-off its unsecured lien on Debtors' property because the language and legislative history of 11 U.S.C. § 1322(b)(2) suggest that wholly unsecured liens are subject to §1322's anti-modification protection. (Brendan Br. at 8–9.) Debtors correctly assert that virtually all federal circuit courts of appeals that have addressed the issue have held that §1322's anti-modification protection does not extend to wholly unsecured mortgages.

The Seventh Circuit has acknowledged the broad consensus among courts that there is a "strip-off right in Chapter 13 [bankruptcies]." *Palomar v. First American Bank*, 722 F.3d 992, 995 (7th Cir. 2013), *see also In re Monroe*, 509 B.R. 613, 627 (Bankr. E.D. Wis. 2014) (concluding that *Palomar* "[suggests] § 1322(b)(2) allows lien stripping"). Likewise, most decisions from the lower courts within the Seventh Circuit hold that the majority position is correct and that a strip-off of a wholly unsecured mortgage is permitted in Chapter 13 bankruptcy. *Brendan Mortg. Inc*, 2013 WL 6634012, at *3 ("The weight of authority among the district and bankruptcy courts in [the Seventh] circuit favors the majority view.") (collecting cases); *In re King*, 290 B.R. 641, 646 (Bankr. C.D. Ill. 2003) ("Most lower courts within the

Seventh Circuit agree that strip-off of a wholly unsecured mortgage is permissible.") (collecting cases).

We find the majority view persuasive and therefore hold that the bankruptcy court did not err as a matter of law in stripping off Brendan's wholly unsecured lien on Debtors' property.

## CONCLUSION

For the reasons discussed above, the bankruptcy court's judgment is affirmed. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated:        Chicago, Illinois
              September 5, 2014